## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 11-** |
| **v.** | : | **DATE FILED: December 14, 2011** |
| **KERMIT B. GOSNELL** | : | **VIOLATIONS:** |
| **SHERRY L. WEST** | | **21 U.S.C. § 846 (conspiracy to distribute** |
| **TAMIRRAH M. FLUELLEN** | : | **controlled substances – 1 count)** |
| **KAREEMA N. CROSS** | | **21 U.S.C. § 841(a)(1)** |
| | : | **(distribution of controlled substances** |
| | | **– 10 counts)** |
| | : | **21 U.S.C. § 860(a) (distribution of controlled** |
| | | **substances within 1,000 feet of a school** |
| | : | **– 10 counts)** |
| | | **21 U.S.C. § 856(a)(1)** |
| | : | **(maintaining a place for the illegal** |
| | | **distribution of controlled substances – 1** |
| | : | **count)** |
| | | **21 U.S.C. § 848(a) (continuing criminal** |
| | : | **enterprise – 1 count)** |
| | | **18 U.S.C. § 2 (aiding and abetting)** |
| | : | **Notices of forfeiture** |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

## BACKGROUND

1.      Defendant KERMIT B. GOSNELL, M.D. was a physician licensed by the

Commonwealth of Pennsylvania and held medical license number MD009422E.  Defendant

GOSNELL was registered with the Drug Enforcement Administration ("DEA") and held DEA

1

registration number AG4676992.  Defendant GOSNELL called his practice the "Family Medical Society A Division Of Women's Medical Society, Inc." ( "WMS") and practiced out of an office building which he owns located at 3801-3805 Lancaster Avenue in Philadelphia, Pennsylvania.

2.     At different times between approximately June, 2008 and February 18, 2010, defendant KERMIT B. GOSNELL hired people to staff his office.  Among those who staffed defendant GOSNELL's office were defendants SHERRY L. WEST, TAMIRRAH M. FLUELLEN, and KAREEMA N. CROSS, as well as Latosha R. Lewis, Earlene Tina Baldwin, and Lynda Gail Williams, all charged elsewhere.

3.     Under federal law, a physician can only issue a prescription for a controlled substance if it is issued for a legitimate medical purpose, and in the usual course of the physician's professional practice.  A prescription that does not meet these requirements is an invalid prescription.

4.     Title 21, United States Code, Sections 801-971, also known as the Controlled Substances Act ("the Act"), governs the manufacture, distribution, and dispensing of controlled substances in the United States.  Specifically, Title 21, United States Code, Section 841, provides that "[e]xcept as authorized, it shall be unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense with intent to manufacture, distribute or dispense, a controlled substance."

5.     Title 21, United States Code, Section 802(10), provides that the term "dispense" means to deliver a controlled substance to an ultimate user by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance.

2

6.      Title 21, United States Code, Section 821, provides that "[t]he Attorney General [of the United States] is authorized to promulgate rules and regulations . . . relating to the registration and control of the manufacture, distribution and dispensing of controlled substances."

7.      The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides:

> (a)      a prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.  The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.  An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act [21 U.S.C. § 829] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

8.      Under the Controlled Substances Act, there are five schedules of controlled substances – Schedules I, II, III, IV, and V.  Controlled substances are scheduled into these levels based upon their potential for abuse, among other things.  For example, Schedule II controlled substances have a high potential for abuse and may lead to severe psychological or physical dependence.  Abuse of Schedule III controlled substances may lead to moderate or low physical dependence or high psychological dependence.  Abuse of Schedules IV and V controlled substances may lead to more limited physical dependence or psychological dependence compared with the drugs or other substances in Schedule III.

9.      Oxycodone is the generic name for an addictive prescription painkiller similar to morphine that is classified under the Controlled Substances Act as a Schedule II controlled substance.  When oxycodone is legally prescribed for a legitimate medical purpose, it is typically used to combat acute, severe pain.  Accordingly, the prescription is usually for a modest number of pills to be taken over a short period of time.  Brand names for common Schedule II controlled substances containing oxycodone include Percocet, Endocet, and Roxicet. Oxycodone is also the active ingredient in the brand OxyContin, legitimately prescribed for the treatment of moderate-to-severe pain lasting more than a few days.  Because of its controlled release property, each OxyContin tablet contains more of the active ingredient oxycodone and needs to be taken less often (twice a day) than other oxycodone-containing drugs.  Even if only taken in prescribed amounts, oxycodone can cause physical and psychological dependence when taken for a long time.

10.      Alprazolam, more commonly referred to by one of its brand names, Xanax, is the generic name for an addictive prescription sedative and anti-anxiety agent that is classified under the Act as a Schedule IV controlled substance.

11.      Promethazine with Codeine, the generic name for a Schedule V narcotic sometimes branded as Phenergan with Codeine, is a cough syrup used for the temporary relief of coughs and upper respiratory symptoms associated with allergy or common cold.

12.      The Pennsylvania Code of Professional and Vocational Standards, Title 49, Chapter 16.92, defines the authority of physicians licensed by the Commonwealth of Pennsylvania to prescribe or dispense controlled substances.  Chapter 16.92 provides in pertinent part:

4

(a)   A person licensed to practice medicine and surgery in this Commonwealth or otherwise licensed or regulated by the Board, when prescribing, administering or dispensing controlled substances, shall carry out, or cause to be carried out, the following minimum standards:

(1)     Initial medical history and physical examination.... [B]efore commencing treatment that involves prescribing, administering or dispensing a controlled substance, an initial medical history shall be taken and an initial examination shall be conducted unless emergency circumstances justify otherwise.  Alternatively, medical history and physical examination information recorded by another health care provider may be considered if the medical history was taken and the physical examination was conducted within the immediately preceding thirty days.  The physical examination shall include an evaluation of the heart, lungs, blood pressure and body functions that relate to the patient's specific complaint.

(2)     Reevaluations.  Among the factors to be considered in determining the number and the frequency of follow-up evaluations that should be recommended to the patient are the condition diagnosed, the controlled substance involved, expected results and possible side effects.  For chronic conditions, periodic follow-up evaluations shall be recommended to monitor the effectiveness of the controlled substance in achieving the intended results.

(3)     Patient counseling.  Appropriate counseling shall be given to the patient regarding the condition diagnosed and the controlled substance prescribed, administered or dispensed.  Unless the patient is in an inpatient care setting, the patient shall be specifically counseled about dosage levels, instructions for use, frequency and duration of use and possible side effects.

(4)     Medical Records.  [C]ertain information shall be recorded in the patient's medical record on each occasion when a controlled substance is prescribed, administered or dispensed.  This information shall include the name of the controlled substance, its strength, the quantity and the date it was prescribed, administered or dispensed to a patient.  The medical record shall also include a specification of the symptoms observed and reported, the diagnosis of the condition for which the controlled substance is being given and the directions given to the patient for the use of the controlled substance.  If the same controlled substance continues to be prescribed, administered or dispensed, the medical record shall reflect changes in the symptoms observed and reported, in the diagnosis of the condition for which the controlled substance is being given and in the directions given to the patient.

5

13.     Accordingly, as a medical doctor, defendant KERMIT B. GOSNELL was authorized to dispense to patients Schedules II, III, IV and V controlled substances and to prescribe medicine to patients, including controlled substances, but only for legitimate medical purposes and in the usual course of professional practice.

14.     In actuality, defendant KERMIT B. GOSNELL, with the assistance of defendants SHERRY L. WEST, TAMIRRAH N. FLUELLEN, and KAREEMA M. CROSS, as well as Latosha R. Lewis, Earlene Tina Baldwin, Lynda Gail Williams, all charged elsewhere, and others known and unknown to the grand jury, ran a "pill mill" out of WMS, at which customers, often referred to as drug "seekers," obtained, for a fee, thousands of medical prescriptions for controlled prescription drugs, without there being any legitimate medical purpose for these prescriptions.  Defendant GOSNELL received over $200,000 in proceeds.

**THE CONSPIRACY**

15.     From at least in or about June, 2008, until on or about February 18, 2010, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**KERMIT B. GOSNELL,**
**SHERRY L. WEST,**
**TAMIRRAH M. FLUELLEN, and**
**KAREEMA N. CROSS**

conspired and agreed together and with Latosha R. Lewis,  Earlene Tina Baldwin, and Lynda Gail Williams, each charged elsewhere, and others known and unknown to the grand jury, to knowingly and intentionally distribute and dispense, outside the usual course of professional practice and for no legitimate medical purpose, mixtures and substances containing detectable amounts of various controlled substances, including over 500,000 pills containing oxycodone (a

6

Schedule II controlled substance), over 400,000 pills containing alprazolam (a Schedule IV controlled substance), and over 19,000 ounces of cough syrup containing codeine (a Schedule V controlled substance), in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(2), (b)(3).

## MANNER AND MEANS

It was part of the conspiracy that:

16.     Defendant KERMIT B. GOSNELL issued prescriptions for various controlled substances, including oxycodone (a Schedule II controlled substance), alprazolam (a Schedule IV controlled substance), and codeine (a Schedule V controlled substance) to customers.  In or about 2008, defendant GOSNELL began calling these customers his "pain management"  practice at WMS.  The number of prescriptions written by defendant GOSNELL for controlled substances increased from approximately several hundred per month filled at pharmacies in 2008 to over 2300 filled at pharmacies in January of 2010.

17.     Defendant KERMIT B. GOSNELL did not work at WMS during the day. Defendant GOSNELL saw customers in the evenings, usually after 7:00 pm and until after midnight into the early morning hours of the following day.

18.     Defendant KERMIT B. GOSNELL's customers seeking prescriptions for controlled substances initially met with defendant GOSNELL briefly and received either a cursory or no physical examination from defendant GOSNELL before receiving prescriptions for controlled substances that were written by defendant GOSNELL for no legitimate medical purpose and outside the usual course of professional practice.  Thereafter, defendant GOSNELL

wrote prescriptions for these controlled substances regularly every month, even though the customer was not required to see the doctor again for six to nine months (if at all).

19.     Defendant KERMIT B. GOSNELL's customers often received the same combination of prescribed medications, namely some type of oxycodone (a Schedule II controlled substance), Alprazolam (a Schedule IV controlled substance), and codeine syrup (a Schedule V controlled substance).

20.     Defendant KERMIT B. GOSNELL rarely, if ever, counseled these customers regarding alternative treatments, such as referrals for physical therapy, psychological, psychiatric or addiction counseling or anti-depressant medication, x-ray/MRI/CT scans, surgery, Cortisone injections, pulmonary treatments like inhalers, or any other treatments for a customer's purported pain, emotional issues, or cough.

21.     In or about July, 2009, defendant KERMIT B. GOSNELL hired a physician's assistant for the purpose of taking medical histories and documenting customer charts so that it would appear that the controlled substances prescriptions defendant GOSNELL wrote for customers were written for legitimate medical purposes in the usual course of professional practice.  The customers received a cursory physical examination but no other medical care or treatment before obtaining a prescription for controlled substances from defendant GOSNELL.

22.     For the first office visit, defendant KERMIT B. GOSNELL initially charged $115.00.  In or about December, 2009, defendant GOSNELL increased the initial office visit charge to $150.00 with a follow up visit fee of $50.00.  That is, every six to nine months, some customers had to pay a follow up fee to receive a cursory physical examination but no other

medical care or treatment before obtaining a prescription for controlled substances from defendant GOSNELL.

23.     Beginning in or about July 2009, defendant GOSNELL began charging customers for refill prescriptions at the time of pick-up.  After the initial visit, customers were still not required to see the doctor again for six to nine months (if at all), but customers were charged $20.00 per set of refill prescriptions to cash-paying customers and $10.00 if customers had insurance.

24.     Defendants SHERRY L. WEST, TAMIRRAH M. FLUELLEN, and KAREEMA N. CROSS, along with others known to the grand jury, including Latosha R. Lewis, Earlene Tina Baldwin, and Lynda Gail Williams, (collectively "WMS office staff ") assisted defendant KERMIT B. GOSNELL in operating defendant GOSNELL's pill mill operation. Among other things, after the initial office visit, one of the WMS office staff took customers' orders for "refill" prescriptions for controlled substances in person, over the phone, or from an WMS office answering machine.  These customer orders were for prescriptions for controlled substances with no legitimate medical purpose.  Customers did not see or speak to defendant GOSNELL in order to make their request for a "refill."   The WMS office staff recorded the orders for "refills" and gave them to defendant GOSNELL.

25.     Defendant KERMIT B. GOSNELL wrote the requested "refill" prescriptions and gave the prescriptions to the WMS office staff.  When customers came to WMS to pick up their order for a "refill," the WMS office staff sold these prescriptions for controlled substances, including Schedules II, IV, and V controlled substances, to cash-paying customers.  Defendant GOSNELL and the WMS office staff allowed customers to purchase these

prescriptions for controlled substances under multiple names.   At the direction of defendant GOSNELL, the WMS office staff charged $20.00 to cash-paying customers for each set of prescriptions per customer name.  This cash was collected and given to defendant GOSNELL at the end of each day shift and at the end of each night shift.   The WMS office staff often collected "tips" from customers ranging from approximately $10.00 to $20.00 per set of prescriptions, that the WMS office staff kept for themselves.  After purchasing prescriptions in one or more names from one of the WMS office staff, the customers went to pharmacies in Philadelphia and elsewhere to fill them.

**OVERT ACTS**

1.       In early 2009, C.T., a person known to the grand jury, went to WMS and placed an order for prescriptions for controlled substances in multiple customer names with Earlene Tina Baldwin.  C.T. then paid a tip to Baldwin of approximately $30.00.  Baldwin put the $30.00 in an envelope with a note to defendant KERMIT B. GOSNELL about the tip. Defendant GOSNELL kept the money.

2.       In or about July, 2009, defendant KERMIT B. GOSNELL instructed WMS office staff member Earlene Tina Baldwin to type up a memorandum to customers from defendant GOSNELL explaining changes to the process of calling in refill prescriptions and picking up prescriptions for controlled substances.   Defendant GOSNELL included a new charge for prescription pick up of $20.00 per set of prescriptions per customer name for cash paying customers.  Defendant GOSNELL instructed Baldwin to tape this memorandum onto the front desk at WMS and inform customers of the change.

10

3.      Due to the high volume of prescription refill requests from customers, in or about summer, 2009, defendant KERMIT B. GOSNELL added an additional phone line at WMS for the purpose of handling prescription refill phone call requests.

4.      In or about November, 2009, at least 1,980 prescriptions for controlled substances written by defendant KERMIT B. GOSNELL were filled at pharmacies in Philadelphia and elsewhere.

5.      In or about December, 2009, at least 1,900 prescriptions for controlled substances written by defendant KERMIT B. GOSNELL were filled at pharmacies in Philadelphia and elsewhere.

6.      In or about January, 2010, at least 2,300 prescriptions for controlled substances written by defendant KERMIT B. GOSNELL were filled at pharmacies in Philadelphia and elsewhere.

7.      From on or about February 1, 2010, through on or about February 18, 2010, defendant KERMIT B. GOSNELL wrote at as many as 200 prescriptions in any one night and at least 1490 prescriptions for controlled substances written by defendant GOSNELL were filled at pharmacies in Philadelphia and elsewhere.

**Sales to T.J.**

8.      On or about October 26, 2009, T.J., a person known to the grand jury, called Latosha R. Lewis on Lewis' cellular telephone to order prescriptions for controlled substances using several different customer names.  Lewis gathered the customer charts for those customers along with a written order for controlled substances and gave those charts and the

11

order to defendant KERMIT B. GOSNELL.  Without seeing the customers, defendant

GOSNELL wrote the requested prescriptions for the controlled substances.

9.      On or about October 28, 2009, T.J. went to WMS where Latosha R. Lewis

sold T.J. at least 11 prescriptions written by defendant KERMIT B. GOSNELL in approximately

5 different names for controlled substances totaling approximately 180 tablets of OxyContin

80mg, 200 tablets of Percocet 10mg, 180 tablets of Xanax 1mg, and 20 ounces of Phenergan with

Codeine.  T.J. paid Lewis $20.00 per name totaling approximately $100.00 for the fee charged by

defendant GOSNELL.  At the end of Lewis' shift, this $100.00 was given to defendant

GOSNELL along with all of the other money gathered during Lewis' shift.  T.J. paid Lewis an

additional tip which Lewis kept for herself.

10.      On or about November 18, 2009, T.J. called Latosha R. Lewis on Lewis'

cellular telephone to order prescriptions for controlled substances in several different customer

names.  T.J. and Lewis discussed several different possible customer names that T.J. could use to

pick up prescriptions.  Lewis indicated that defendant GOSNELL was not in the office that day

and that the next possible day to pick up prescriptions was on November 20, 2009.  Lewis then

gathered the customer charts for those customers along with a written order for controlled

substances and gave those charts and the order to defendant KERMIT B. GOSNELL.  Without

seeing the customers, defendant GOSNELL wrote the requested prescriptions for the controlled

substances.

11.      On or about November 20, 2009, T.J. called Latosha R. Lewis on her

cellular telephone to ask whether the prescriptions were ready to be picked up.  Lewis said that

she had several of T.J.'s names ready to be picked up.  Within minutes, T.J. went to WMS where

Lewis sold T.J. at least 19 prescriptions written by defendant KERMIT B. GOSNELL in approximately 8 different names for controlled substances totaling approximately 300 tablets of OxyContin 80mg, 280 tablets of Percocet 10mg, 360 tablets of Xanax 1mg, and 20 ounces of Phenergan with Codeine.  T.J. paid Lewis $20.00 per name totaling approximately $160.00 for the fee charged by defendant GOSNELL.  At the end of Lewis' shift, this $160.00 was given to defendant GOSNELL along with all of the other money gathered during Lewis' shift.  T.J. paid Lewis an additional tip which Lewis kept for herself.

12.     On or about December 3, 2009, T.J. called Latosha R. Lewis on Lewis' telephone to order prescriptions for controlled substances in several different customer names for T.J. to pick up at WMS.  Lewis then gathered the customer charts for those customers along with a written order for controlled substances and gave those charts and the order to defendant KERMIT B. GOSNELL.  Without seeing the customers, defendant GOSNELL wrote the requested prescriptions for the controlled substances.

13.     On or about December 9, 2009, Latosha R. Lewis sold to T.J. at least 17 prescriptions written by defendant KERMIT B. GOSNELL in approximately 8 different names for controlled substances totaling approximately 300 tablets of OxyContin 80mg, 330 tablets of Percocet 10mg, 50 tablets of Percocet 5mg, and 180 tablets of Xanax 1mg.  T.J. paid Lewis $20.00 per name totaling approximately $160.00 for the fee charged by defendant GOSNELL. T.J. also paid Lewis an additional tip which Lewis kept for herself.

**Sales to C.T.**

14.     On or about April 2, 2009, C.T., a person known to the grand jury, ordered prescriptions for controlled substances from Latosha R. Lewis.   Lewis then gathered the

13

customer chart for C.T. along with a written order for controlled substances and gave the chart

and the order to defendant  KERMIT B. GOSNELL.  Without seeing C.T., defendant GOSNELL

wrote the requested prescriptions for the controlled substances.

15.     On or about April 3, 2009, Earlene Tina Baldwin sold C.T. prescriptions

written by defendant KERMIT B. GOSNELL for controlled substances totaling approximately 60

tablets of OxyContin 80mg, and 90 tablets of Percocet 10mg.

**Sales to W.B.**

16.     On or about June 29, 2009, defendant SHERRY L. WEST called W.B., a

person known to the grand jury, using defendant WEST's cellular telephone.  W.B. placed an

order for prescriptions in the name of W.B.  Defendant WEST then gathered the customer chart

for W.B. along with a written order for controlled substances and gave the chart and the order to

defendant KERMIT B. GOSNELL.  Without seeing the customer, defendant GOSNELL wrote

the requested prescriptions for the controlled substances.

17.     On or about June 30, 2009, a WMS office staff member sold W.B. a

prescription written by defendant KERMIT B. GOSNELL in the name of W.B. for 60 tablets of

OxyContin 80mg.

18.     On or about July 7, 2009, W.B. and defendant SHERRY L. WEST called

each other several times using their cellular telephones.  W.B. ordered prescriptions in the names

of T.M. and R.J.  Defendant WEST then gathered the customer charts for T.M. and R.J. along

with a written order for controlled substances and gave the charts and the orders to defendant

KERMIT B. GOSNELL.  Without seeing the customers, defendant GOSNELL wrote the

requested prescriptions for the controlled substances.

14

19.     On or about July 8, 2009, a WMS office staff member sold W.B.

prescriptions written by defendant KERMIT B. GOSNELL in the names of T.M. and R.J.,

totaling 30 tablets of Percocet 5mg, 60 tablets of OxyContin 80mg and 4 ounces of Phenergan

with Codeine.

### Sales to A.L.

20.     On or about January 8, 2010 a person known to the grand jury as A.L.

placed an order with Latosha R. Lewis for prescriptions for controlled substances in at least 13

different customer names.  Lewis then gathered the customer charts for at least 13 different

customer names along with a written order for controlled substances and gave the charts and the

orders to defendant KERMIT B. GOSNELL.  Without seeing the customers, defendant

GOSNELL wrote the requested prescriptions for the controlled substances.

21.     On or about January 8, 2010, A.L. placed an order with defendant

TAMIRRAH M. FLUELLEN for a controlled substance in one customer name.  Defendant

FLUELLEN then gathered the customer chart along with a written order for the controlled

substance and gave the chart and the order to defendant KERMIT B. GOSNELL.  Without seeing

the customer, defendant GOSNELL wrote the requested prescriptions for the controlled

substances.

22.     On or about January 12, 2010, A.L. went to WMS where Latosha R. Lewis

sold A.L. at least 8 prescriptions written by defendant KERMIT B. GOSNELL in at least 6

different names for controlled substances totaling 300 tablets of OxyContin 80mg, 120 tablets of

Percocet 10mg, and 8 ounces of Phenergen with Codeine from Latosha R. Lewis for $20.00 per

name to WMS.   A.L. also paid Lewis a tip which Lewis kept for herself.

15

23.     On or about January 13, 2010, A.L. went to WMS where Latosha R. Lewis sold A.L. at least 11 prescriptions written by defendant KERMIT B. GOSNELL in at least 8 different names for controlled substances totaling 520 tablets of OxyContin 80mg, and 12 ounces of Phenergen with Codeine from Latosha R. Lewis for $20.00 per name for WMS.   A.L. also paid Lewis a tip which Lewis kept for herself.

### Sales to A.M.

24.     On or about November 20, 2009, A.M., a person known to the grand jury, placed an order with Lynda Gail Williams for prescriptions for controlled substances for a customer by the name of C.B.  A WMS office staff member then gathered the customer chart for C.B. along with a written order for controlled substances and gave the chart and the order to defendant KERMIT B. GOSNELL.  Without seeing C.B., defendant GOSNELL wrote the requested prescriptions for the controlled substances.

25.     On or about December 2, 2009, a WMS office staff member sold A.M. a prescription written by defendant KERMIT B. GOSNELL in the name of customer C.B. for controlled substances totaling 60 tablets of OxyContin 80mg.

26.     From on or about January 14, 2010 through on or about January 15, 2010, A.M. placed an order with defendant TAMIRRAH M. FLUELLEN for prescriptions for controlled substances in at least 4 different customer names.  Defendant FLUELLEN then gathered the customer charts for at least 4 customer names along with a written order for controlled substances and gave the charts and the orders to defendant KERMIT B. GOSNELL. Without seeing the customers, defendant GOSNELL wrote the requested prescriptions for the controlled substances.

16

27.     On or about January 15, 2010, A.M. placed an order with Latosha R. Lewis for prescriptions for controlled substances in at least 2 different customer names.  Lewis then gathered the customer charts for at least 2 customer names along with a written order for controlled substances and gave the charts and the orders to defendant KERMIT B. GOSNELL. Without seeing the customers, defendant GOSNELL wrote the requested prescriptions for the controlled substances.

28.     On or about January 19, 2010, A.M. went to WMS where Lewis sold A.M. at least 10 prescriptions written by defendant KERMIT B. GOSNELL in at least 6 different names for controlled substances totaling 420 tablets of OxyContin 80mg, and 20 ounces of Phenergen with Codeine from Latosha R. Lewis for $20.00 per name for WMS.   A.M. also paid Lewis a tip which Lewis kept for herself.

29.     On or about January 21, 2010, a person known to the grand jury as A.M. placed an order with defendant TAMIRRAH M. FLUELLEN for prescriptions for controlled substances in at least 3 different customer names.  Defendant FLUELLEN then gathered the customer charts for at least 3 customer names along with a written order for controlled substances and gave the charts and the orders to defendant KERMIT B. GOSNELL.  Without seeing the customers, defendant GOSNELL wrote the requested prescriptions for the controlled substances.

30.     On or about January 25, 2010, A.M. placed an order with defendant TAMIRRAH M. FLUELLEN for prescriptions for controlled substances in at least 12 different customer names.  Defendant FLUELLEN then gathered the customer charts for at least 12 differenet customer names along with a written order for controlled substances and gave the

17

charts and the orders to defendant KERMIT B. GOSNELL.  Without seeing the customers,

defendant GOSNELL wrote the requested prescriptions for the controlled substances.

       31.     On or about January 28, 2010, A.M. went to WMS where Latosha R.

Lewis sold A.M. at least 25 prescriptions written by defendant KERMIT B. GOSNELL in at least

14 different names for controlled substances totaling approximately 750 tablets of OxyContin

80mg, 120 tablets of Percocet 10mg, and 52 ounces of Phenergen with Codeine from Latosha R.

Lewis for $20.00 per name for WMS.  A.M. also paid Lewis a tip which Lewis kept for herself.

### Sales to D.B.

       32.     On or about January 14 through January 16, 2010, D.B., a person known

to the grand jury, and defendant TAMIRRAH M. FLUELLEN communicated via cellular

telephone, and D.B. placed an order for prescriptions for controlled substances in at least 15

different customer names.  Defendant FLUELLEN then gathered the customer charts for at least

15 different customer names, along with a written order for controlled substances and gave the

charts and the orders to defendant KERMIT B. GOSNELL.  Without seeing the customers,

defendant GOSNELL wrote the requested prescriptions for the controlled substances.

       33.     On or about January 19, 2010, D.B. went to WMS where Latosha R.

Lewis sold D.B. at least 25 prescriptions written by defendant KERMIT B. GOSNELL in at least

15 different names for controlled substances totaling 720 tablets of OxyContin 80mg, 210 tablets

of Percocet 10mg, and 52 ounces of Phenergen with Codeine from Latosha R. Lewis and paid

$20.00 per name to Lewis for WMS.   D.B. paid Lewis a tip which Lewis kept for herself.

       34.     On or about February 11, 2010, D.B. called defendant TAMIRRAH M.

FLUELLEN on her cellular telephone and placed an order for prescriptions for controlled

substances for R.L., a person known to the grand jury.  Defendant FLUELLEN then gathered the customer chart for R.L along with a written order for controlled substances and gave the chart and the order to defendant KERMIT B. GOSNELL.  Without seeing the customer, defendant GOSNELL wrote the requested prescriptions for the controlled substance.

35.     On or about February 12, 2010, defendant TAMIRRAH M. FLUELLEN sold D.B. a prescription written by defendant KERMIT B. GOSNELL in the name of R.L. for 60 tablets of OxyContin 80mg from and paid $20.00 to defendant FLUELLEN for WMS.   D.B. paid defendant FLUELLEN an additional tip which FLUELLEN kept for herself.

All in violation of Title 21, United States Code, Section 846.

## COUNTS TWO THROUGH ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates set forth below, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**KERMIT B. GOSNELL,**
**SHERRY L. WEST, and**
**TAMIRRAH M. FLUELLEN,**

as described below, knowingly and intentionally distributed and dispensed, and aided and abetted

the distribution and dispensing of, pills and syrup, which were mixtures and substances

containing the controlled substances listed below, by causing prescriptions to be issued for the

controlled substances, outside the course of professional practice and for other than a legitimate

medical purpose, each date constituting a separate count of this indictment:

| Count | Defendant(s) charged in Count | Date | Controlled Substances |
|---|---|---|---|
| 2 | KERMIT B. GOSNELL | 10/28/09 | 180 tablets OxyContin 80mg, Schedule II<br>200 tablets Percocet 10mg, Schedule II<br>180 tablets Xanax 1mg, Schedule IV<br>20 ounces Phenergan with Codeine, Schedule V |
| 3 | KERMIT B. GOSNELL | 11/20/09 | 300 tablets OxyContin 80mg, Schedule II<br>280 tablets Percocet 10mg, Schedule II<br>360 tablets Xanax 1mg, Schedule IV<br>20 ounces Phenergan with Codeine, Schedule V |
| 4 | KERMIT B. GOSNELL | 12/9/09 | 300 tablets OxyContin 80mg, Schedule II<br>330 tablets Percocet 10mg, Schedule II<br>50 tablets Percocet 5mg, Schedule II<br>180 tablets Xanax 1mg, Schedule IV |

| Count | Defendant(s) charged in Count | Date | Controlled Substances |
|---|---|---|---|
| 5 | KERMIT B. GOSNELL | 1/28/10 | 80 tablets Percocet 10mg, Schedule II<br>90 tablets Xanax 1mg, Schedule IV<br>4 ounces Phenergan with Codeine, Schedule V |
| 6 | KERMIT. B. GOSNELL | 4/3/09 | 60 tablets OxyContin 80mg, Schedule II<br>90 tablets Percocet 10mg, Schedule II |
| 7 | KERMIT B. GOSNELL | 11/20/09 | 60 tablets OxyContin 80mg, Schedule II |
| 8 | KERMIT B. GOSNELL, SHERRY L. WEST | 6/29/09 | 60 tablets OxyContin 80mg, Schedule II |
| 9 | KERMIT B. GOSNELL, SHERRY L. WEST | 7/8/09 | 60 tablets OxyContin 80mg, Schedule II<br>30 tablets Percocet 10mg, Schedule II<br>4 ounces Phenergan with Codeine, Schedule V |
| 10 | KERMIT B. GOSNELL, TAMIRRAH M. FLUELLEN | 1/19/10 | 720 tablets OxyContin 80mg, Schedule II<br>210 tablets of Percocet 10mg<br>52 ounces Phenergan with Codeine, Schedule V |
| 11 | KERMIT B. GOSNELL, TAMIRRAH M. FLUELLEN | 2/12/10 | 60 tablets OxyContin 80mg, Schedule II |

All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(2), (b)(3), and Title 18, United States Code, Section 2.

## COUNTS TWELVE THROUGH TWENTY-ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**KERMIT B. GOSNELL,
SHERRY L. WEST, and
TAMIRRAH M. FLUELLEN,**

as described below, knowingly and intentionally distributed and dispensed, and aided and abetted the distribution and dispensing of, pills and syrup, which were mixtures and substances containing the controlled substances listed below, by causing prescriptions to be issued for the controlled substances, outside the course of professional practice for other than a legitimate medical purpose, within 1000 feet of the real property comprising the Charles R. Drew Elementary School located at 3724 Warren Street, in Philadelphia, Pennsylvania, a public elementary school, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(2), (b)(3), each date constituting a separate count in this indictment:

| Count | Defendant(s) charged in Count | Date | Controlled Substances |
|-------|-------------------------------|------|-----------------------|
| 12 | KERMIT B. GOSNELL | 10/28/09 | 180 tablets OxyContin 80mg, Schedule II<br>200 tablets Percocet 10mg, Schedule II<br>180 tablets Xanax 1mg, Schedule IV<br>20 ounces Phenergan with Codeine, Schedule V |
| 13 | KERMIT B. GOSNELL | 11/20/09 | 300 tablets OxyContin 80mg, Schedule II<br>280 tablets Percocet 10mg, Schedule II<br>360 tablets Xanax 1mg, Schedule IV<br>20 ounces Phenergan with Codeine, Schedule V |

| Count | Defendant(s) charged in Count | Date | Controlled Substances |
|-------|-------------------------------|------|------------------------|
| 14 | KERMIT B. GOSNELL | 12/9/09 | 300 tablets OxyContin 80mg, Schedule II<br>330 tablets Percocet 10mg, Schedule II<br>50 tablets Percocet 5mg, Schedule II<br>180 tablets Xanax 1mg, Schedule IV |
| 15 | KERMIT B. GOSNELL | 1/28/10 | 80 tablets Percocet 10mg, Schedule II<br>90 tablets Xanax 1mg, Schedule IV<br>4 ounces Phenergan with Codeine, Schedule V |
| 16 | KERMIT. B. GOSNELL | 4/3/09 | 60 tablets OxyContin 80mg, Schedule II<br>90 tablets Percocet 10mg, Schedule II |
| 17 | KERMIT B. GOSNELL | 11/20/09 | 60 tablets OxyContin 80mg, Schedule II |
| 18 | KERMIT B. GOSNELL, SHERRY L. WEST | 6/29/09 | 60 tablets OxyContin 80mg, Schedule II |
| 19 | KERMIT B. GOSNELL, SHERRY L. WEST | 7/8/09 | 60 tablets OxyContin 80mg, Schedule II<br>30 tablets Percocet 10mg, Schedule II<br>4 ounces Phenergan with Codeine, Schedule V |
| 20 | KERMIT B. GOSNELL, TAMIRRAH M. FLUELLEN | 1/19/10 | 720 tablets OxyContin 80mg, Schedule II<br>210 tablets of Percocet 10mg<br>52 ounces Phenergan with Codeine, Schedule V |
| 21 | KERMIT B. GOSNELL, TAMIRRAH M. FLUELLEN | 2/12/10 | 60 tablets OxyContin 80mg, Schedule II |

All in violation of Title 21, United States Code, Section 860(a), and Title 18, United States Code, Section 2.

## COUNT TWENTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT**:

From at least in or about June, 2008, until on or about February 18, 2010, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### KERMIT B. GOSNELL

knowingly used and maintained a place, that is, the property located at 3801-3805 Lancaster Avenue, Philadelphia, Pennsylvania, for the purpose of unlawfully distributing and dispensing controlled substances, including oxycodone (a Schedule II controlled substance), alprazolam (a Schedule IV controlled substance), and codeine (a Schedule V controlled substance).

In violation of Title 21, United States Code, Section 856(a)(1).

## COUNT TWENTY-THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 14, and 16 through 25, and Overt Acts 1 through 35 of Count One are realleged and incorporated here.

2.    From at least in or about June, 2008, until on or about February 18, 2010, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**KERMIT B. GOSNELL**

knowingly and intentionally engaged in a continuing criminal enterprise in that he:

(a)    knowingly and intentionally violated Title 21, United States Code, Sections 841(a)(1), 846, 856 and 860, which are felonies, and such violations were part of a continuing series of violations of Title 21, United States Code, Sections 841(a)(1), 846, 856 and 860, including, but not limited to, the substantive violations alleged in Counts One through Twenty-Two of this indictment, and the substantive violations alleged in Overt Acts 8 through 35 of Count One of this indictment;

(b)    the series of violations described in paragraph (a) were undertaken in concert with five or more persons, known and unknown to the grand jury, with respect to whom defendant KERMIT B. GOSNELL occupied a position of organizer, a supervisory position and a position of management; and

(c)    defendant KERMIT B. GOSNELL obtained substantial income and resources from the violations described in paragraphs (a) and (b).

In violation of Title 21, United States Code, Section 848(a).

25

## <u>NOTICE OF FORFEITURE NO. 1</u>

**THE GRAND JURY FURTHER CHARGES THAT**:

1.    As a result of the violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(2), (b)(3), and 846 set forth in this indictment, defendants

**KERMIT B. GOSNELL,**
**SHERRY L. WEST,**
**TAMIRRAH M. FLUELLEN, and**
**KAREEMA N. CROSS**

shall forfeit to the United States of America

(a)    any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses; and

(b)    any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offenses.

Such property shall include, but not be limited to, a personal money judgment, that is, a sum of money equal to at least $200,000 in United States currency, representing the amount of property/proceeds obtained as a result of the violations of Title 21, United States Code, Sections 841 and 846, for which the defendants are jointly and severally liable.

2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

26

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the property subject to

forfeiture.

All pursuant to Title 21, United States Code, Section 853.

## <u>NOTICE OF FORFEITURE NO. 2</u>

**THE GRAND JURY FURTHER CHARGES THAT**:

       1.     As a result of the violation of Title 21, United States Code, Section 848, set forth in this indictment, defendant

### **KERMIT B. GOSNELL**

shall forfeit to the United States of America

       (a)     any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense;

       (b)     any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offense; and

       (c)     any interest in, claims against, and property or contractual rights affording a source of control over the enterprise, as the result of the violation of Title 21, United States Code, Section 848, as charged in this indictment.

       Such property shall include, but not be limited to, a personal money judgment, that is, a sum of money equal to at least $200,000 in United States currency, representing the amount of property/proceeds obtained as a result of the violation of Title 21, United States Code, Section 848.

       2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

       (a)     cannot be located upon the exercise of due diligence;

       (b)     has been transferred or sold to, or deposited with, a third party;

       (c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the property subject to

forfeiture.

All pursuant to Title 21, United States Code, Section 853.

_____

**GRAND JURY FOREPERSON**

_____

**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**

**First Assistant U.S. Attorney**

29